■ In the Matter of ANDONIS MORFESIS et al., Petitioners, v ELLIOTT WILK, Respondent.—This is a proceeding brought pursuant to CPLR article 78 which seeks an order transferring a case from Justice Wilk to 1 of the 5 City Parts in the Supreme Court of New York County on the grounds that transfer is required by (1) section 202.3 (c) (2) of the Uniform Rules for Trial Courts (22 NYCRR), (2) the IAS Manual for Justices of the Supreme Court, New York County, Civil Branch, dated December 4, 1985 and (3) a memorandum sent to all Justices of the Supreme Court by Justice Xavier Riccobono, the Administrative Judge of the Supreme Court, Civil Branch, New York County, in or about October 1986. We deny the request and dismiss the petition, without costs.

The underlying action which is sought to be transferred was commenced on or about August 25, 1987 *(City of New York v*

*Morfesis,* index No. 45277/87) against the petitioners herein. It alleged statutory and common-law nuisance and sought the appointment of a receiver for 15 buildings and the establishment of a fund to abate hazardous and unhealthy conditions in the buildings. Subsequently, on September 8, 1987, respondent City of New York moved for a preliminary injunction directing the abatement of certain hazardous conditions in the buildings. In the request for judicial intervention (RJI) form which accompanied the order to show cause why a preliminary injunction should not be entered, respondent city requested that the case be assigned to Justice Wilk on the grounds that a related action was pending *(Gabriel v 351 St. Nicholas Equities,* index No. 14227/86). The RJI form requested the "nature of the relationship" between the cases and the respondent city inserted the phrase, "Both concern possession and control of same premises." The "related action", *Gabriel v 351 St. Nicholas Equities,* was a mortgage foreclosure action in which Justice Eugene Wolin, now retired, by order dated July 11, 1986, appointed a receiver for 351 St. Nicholas Avenue, 1 of the 15 properties which the city alleged contained hazardous conditions. The receiver was directed, among other things, to collect rents and make repairs to the property. A foreclosure sale of the property, scheduled for September 8, 1987, has been stayed at the request of the petitioners here who wish to cure their default.

In July 1987, prior to the commencement of the action of *City of New York v Morfesis* in August 1987, the New York City Department of Housing Preservation and Development (HPD) advised Justice Wilk that it intended to move to remove and consolidate with the mortgage foreclosure action a pending Civil Court action against the owners of the 15 buildings in question here, an action which sought the elimination of 236 Housing Maintenance Code violations and payment for moneys expended for emergency repairs. The motion is apparently now pending before Justice Wilk.

In September 1987, at the time of the demand for a preliminary injunction in the case of *City v Morfesis,* the city did not serve upon the petitioners here the RJI form which requested assignment of the case to Justice Wilk. It should be noted that because of the failure, the city did not comply with section 202.6 of the Uniform Rules for Trial Courts. Nevertheless, in an oral argument on September 16, 1987 and, subsequently, in writing and by oral argument on October 21, 1987, all parties had an opportunity to argue their positions with respect to the transfer of *City v Morfesis* to a City Part.

In a decision and order dated November 5, 1987, Justice Wilk denied the motion to transfer *City v Morfesis* to a City Part. Justice Wilk found "incorrect" the contention that all city cases had to be handled in one of the City Parts and the contention that the cases were not related. He concluded that "the matters bear sufficient relationship to warrant consideration by a single judge."

The case of *City v Morfesis* was assigned to Justice Wilk by a clerk who accepted the statement in the RJI form that the case was related to another case already being handled by Justice Wilk. The assignment demonstrates the ongoing practice in the Individual Assignment System (IAS) of assigning related cases to the same Judge. The Uniform Rules for Trial Courts do not deal with the issue of whether related cases should be assigned to the same Judge. The practice which has developed, of permitting a Judge who has the arguably related case to determine if the cases are truly related, is a sound one. It permits the person most familiar with the already pending case to make the determination of whether the new case is related. If this were not done, a Judge unfamiliar with either the pending case or the new case would have to be assigned to make a decision. Contrary to the position of the petitioners, the Uniform Rules for Trial Courts do not require that all city cases be handled by 1 of the 5 City Parts regardless of any other pending actions. An examination of the authorities cited by petitioners makes evident that the issue of the arguably related case is not addressed. First, section 202.3 (c) (2) of the Uniform Rules for Trial Courts states only that, "Where more than one judge is especially assigned to hear a particular category of action or proceeding [here cases involving the city], the assignment of such actions or proceedings to the judges so assigned shall be at random." Second, the IAS Manual referred to states only as follows: *"Government IAS parts*—will receive cases in which the City of New York, or Transit Authority are parties." Third, while the memorandum from Justice Riccobono, circulated around October 1986, is not included in the papers, there is nothing to suggest that it required all city cases to be heard by 1 of the 5 City Parts, even where a related case was before a Judge who was not in a City Part. The Uniform Rules for Trial Courts contemplate the situation where a new case, unrelated to other cases already filed, comes into the system and must be assigned to a Judge. Perhaps a rule should be fashioned to deal with cases which are arguably related to others already filed.

There was no abuse of discretion by Justice Wilk in his

refusal to transfer the case of *City v Morfesis* to a City Part. Moreover, while reasonable persons may disagree on the relation between the cases, there was no abuse of discretion in Justice Wilk's finding of a relation. A receiver with authority to repair had already been appointed for the building involved in a foreclosure action. The fact that there are allegedly hazardous conditions in that building which the city seeks to correct in *City v Morfesis* is a sufficient reason to have the case assigned to the same Judge.

Finally, to require all city cases to be determined only by Judges in the City Parts is to preclude from administrators the necessary flexibility for dealing with the myriad problems which can arise in an IAS system. Concur—Carro, Ellerin and Smith, JJ.

Sullivan, J. P., and Ross, J., dissent in a memorandum by Sullivan, J. P., as follows: In this CPLR article 78 proceeding petitioners, defendants in the recently filed underlying action brought by the City of New York, seek to have that action transferred pursuant to section 202.3 (c) (2) of the Uniform Rules for Trial Courts (22 NYCRR 202.3 [c] [2]) and the IAS Manual for Justices of the Supreme Court, New York County, Civil Branch, dated December 4, 1985, to the ex parte motion office of the Supreme Court for random assignment to 1 of the 5 IAS Parts established to handle cases in which the city is a party. Petitioners allege that the underlying action was, in the first instance, improperly assigned by the ex parte motion office to Justice Wilk in violation of the Uniform Rules for Trial Courts and IAS Manual. I find merit to petitioners' claims and would grant the petition.

The underlying action seeks the abatement of hazardous conditions alleged to exist in 15 different buildings owned or managed by petitioners, the appointment of a receiver to operate the buildings until such conditions are remedied, the establishment of a fund to be used by the receiver to abate the conditions, and the imposition of various penalties. That action was not randomly assigned to 1 of the 5 City Parts, but, rather, referred directly by the ex parte motion clerk's office to Justice Wilk on the basis of a statement contained in the request for judicial intervention (RJI) that a pending related case was being handled by Justice Wilk. The RJI, prepared and filed by the Corporation Counsel, was never served on any of the defendants, petitioners herein, as required by section 202.6 of the Uniform Rules for Trial Courts.

Section 202.3 (c) (2) of the Uniform Rules for Trial Courts requires the assignment of cases by random selection to

Judges specially assigned to hear a particular category of actions or proceedings as authorized by the Chief Administrator. The Administrative Judge has established five IAS Parts to handle cases in which the city is a party. The IAS Manual and an October 1986 memorandum from the Administrative Judge require the assignment of any case in which the city is a party to the Justices presiding in the five designated Parts. The same memorandum stated that if in the normal course a city case were sent to a Justice other than one of those presiding over a City Part it should be transferred to one of the designated Justices.

That the Uniform Rules for Trial Courts require that all city cases be handled by 1 of the 5 City Parts is beyond dispute. Section 202.3, in pertinent part, provides:

"(b) Assignments * * * Assignments *shall* be made by the clerk of the court pursuant to a method of random selection authorized by the Chief Administrator * * *

"(c) Exceptions * * *

"(2) The Chief Administrator may authorize the establishment in any court of special categories of actions and proceedings * * * for assignment to judges specially assigned to hear such actions or proceedings. Where more than one judge is specially assigned to hear a particular category of action or proceeding, the assignment of such actions or proceedings to the judges so assigned *shall* be at random." (Emphasis added.) As used in statutes or rules or the like, words of command such as "shall" are generally construed as mandatory. (*Daytop Vil. v Consolidated Edison Co.,* 61 NY2d 933, 934; *Dashinsky v Santjer,* 32 AD2d 382, 387.) Thus, assignment by random selection is mandatory, except, for purposes of this controversy, in the case of a Judge specially assigned to hear a certain case; in the event, however, that more than one Judge is so assigned, the assignment "shall be at random" (22 NYCRR 202.3 [c] [2]).

No one argues with the proposition that the principle of random selection should, even in the absence of a specific provision therefor in the Uniform Rules for Trial Courts, yield in a "related case" situation. Not only does such an exception make sense in terms of judicial economy but, undeniably, court administrators should have the flexibility to allow a departure from the random selection principle when the interests of justice compel the continuous supervision of related cases by a single Judge. Neither the viability nor the rationale of "related case" referrals is the issue here, however, where

the referral was accomplished by an ex parte maneuver in violation of section 202.6 of the Uniform Rules for Trial Courts and the claim of "related case" is specious at best.

The basis for the "related case" reference is that Justice Wilk had before him a mortgage foreclosure proceeding, *Gabriel v 351 St. Nicholas Equities*, involving 1 of the 15 buildings that are the subject of the underlying action, and in which the city was a nominal party. The complaint in the mortgage foreclosure action alleged that the City Franchise Tax Bureau might have a claim or lien against the premises subordinate to the lien of the plaintiffs' mortgage and that the Department of Rental Housing and Maintenance was a judgment creditor with liens subordinate to the plaintiffs'. When the city, by order to show cause, sought a preliminary injunction compelling the abatement of certain hazardous conditions in the underlying action, its RJI, referring to the mortgage foreclosure action, stated, "Both [cases] concern possession and control of same premises." That statement appears to be as inaccurate now as it was when made.

Possession and control of the mortgaged premises was never an issue in the foreclosure action, the sole basis of which was the alleged nonpayment of principal and interest. Only the city appeared, claiming a $929.22 priority over the plaintiffs' lien. A judgment of foreclosure and sale preserving the city's claim was entered even before the underlying action was ever commenced. On the other hand, the latter action, as already noted, seeks, *inter alia,* the abatement of alleged hazardous conditions in 15 different buildings, penalties of $1,000 per nuisance for each day that the same is permitted to exist, $5,000 for each Building Code violation and $150 per day per violation for each day that the petitioners fail to remove such violation, and an award of $43,684 for the cost of emergency repairs. Thus, it is obvious that the "related" mortgage foreclosure action and the underlying public nuisance action have nothing in common, except for the irrelevant coincidence that 1 of the 15 buildings involved in the latter action is the subject of the mortgage foreclosure.*

The city now attempts to justify its claim that the two matters are related by arguing that the condition of the mortgaged premises was an issue in the foreclosure proceed-

---

* The majority's stress on Justice Wilk's conclusion in the determination of petitioners' motion to transfer the underlying case, decided subsequent to the commencement of this proceeding, that "the matters bear sufficient relationship to warrant consideration by a single judge" is unavailing. Notably absent is any explanation as to how the cases are related.

ing. In support of this argument it claims that attorneys for the Department of Housing Preservation and Development (HPD) had advised Justice Wilk on July 29, 1987, prior to the commencement of the underlying action, that HPD intended to seek to remove and consolidate a pending Civil Court action commenced by it against the owners of the premises in the mortgage foreclosure action with the foreclosure action. In the Civil Court action HPD sought the correction of 236 outstanding Housing Maintenance Code violations, the recovery of fines and penalties and the payment of moneys expended by HPD for emergency repairs. Consolidation was allegedly sought so that the receiver appointed in the foreclosure action could be authorized to make urgently needed repairs. Of course, consolidation was not required to achieve such a result. The same receiver already appointed in the mortgage foreclosure could have been appointed in the Civil Court action. It is also noteworthy that HPD never sought to have a receiver appointed in that action. Moreover, the consolidation motion had not even been made at the time of the filing of the RJI. In fact, although pending, it had not yet been decided at the time issue was joined in this proceeding. In any event, the argument based on the consolidation motion is sheer bootstrapping.

Equally meritless is the suggestion that the ex parte motion clerk "independently determined" that the underlying action and the previously filed mortgage foreclosure were sufficiently related so as to justify assignment of the case to Justice Wilk. The city has submitted neither an affidavit nor any other documentation to support such a conclusion, and petitioners were never given the opportunity to be heard since the RJI was never served on them. It seems fairly obvious that the clerk in such cases accepts at face value the representation set forth in the RJI, which is signed by the attorney for the party seeking intervention.

In the circumstances presented, assigning this case to Justice Wilk, rather than permitting random selection among the five Parts designated to hear cases in which the city is a party, appears to be nothing less than a deliberate attempt to circumvent the IAS rules and to steer the underlying nuisance abatement action to a particular Judge. The case was not related at all to the private mortgage foreclosure action and, even if it were, petitioners, by virtue of the city's failure to serve them with a copy of the RJI, were never given notice of the city's attempt to bypass the random assignment of the case to a City Part. To countenance what has occurred here is

to condone a form of Judge-shopping, and to wreak havoc upon the IAS system, which, to prove successful, must have the confidence of the Bar that cases are truly being assigned on a random selection basis. Nothing, of course, precludes the city from moving on the basis of additional facts before the Judge to whom the underlying case is assigned for a referral to Justice Wilk on the ground that he has before him a related case.

The writ should be granted and the underlying action returned to the ex parte motion clerk for assignment to one of the City Parts in accordance with the Uniform Rules for Trial Courts.

